# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1602
Lower Tribunal No. 18-690
_____

**Chen Peng and Xingzhi Chen,**
Appellants,

vs.

**Citizens Property Insurance Corporation,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Montalto Legal, LLC, and Stephen Montalto, for appellants.

Nicklaus & Associates, P.A., and Edward R. Nicklaus and Stephen V. Marasia, for appellee.

Before FERNANDEZ, C.J., and EMAS and SCALES, JJ.

SCALES, J.

Appellants Chen Peng and Xingzhi Chen ("Chen"), plaintiffs below, appeal both a final summary judgment in favor of appellee Citizens Property Insurance Corporation ("Citizens"), defendant below, and an antecedent order that excluded the testimony of Chen's expert witness. Because we conclude that the trial court erred in granting Citizens's Daubert[1] motion to exclude the testimony of Chen's expert, we reverse.

## I. Relevant Facts and Procedural History

### A. Chen's Claim of Wind-Created Roof Damage

Citizens issued a "wind-only" insurance policy to Chen for Chen's residence for the period of December 22, 2016, to December 22, 2017. Chen reported a roof leak and accompanying interior water damage that had occurred on September 10, 2017, the date Hurricane Irma struck Miami-Dade County.

The relevant policy provision reads as follows:

**Peril Insured Against**

1. We insure for direct physical loss to the property described . . . by the peril of windstorm or hail unless the loss is excluded in EXCLUSIONS.

2. With respect to paragraph 1. above, coverage for loss caused by a Peril Insured Against includes loss to:

. . . .

---

[1] See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

2

b. The inside of a building or the property we cover contained in a building caused by . . . rain . . . if the direct force of the windstorm or hail first damages the building, causing an opening through which the rain . . . enters and causes damage.

Two weeks after Hurricane Irma passed, on September 24, 2017, Citizens inspected Chen's roof. Citizens's inspector found no visible sign of roof damage or a roof opening attributable to windstorm. The inspector noted damage from wear and tear.[2] On January 9, 2018, Chen filed a breach of contract lawsuit against Citizens in the circuit court.

Citizens sent another roof inspector to Chen's home on June 4, 2018. Like the first inspector, the second inspector concluded that none of the damage inside Chen's home was caused by an opening created by Hurricane Irma. This inspector further concluded that, if water from the roof penetrated Chen's home, then it came through a pre-existing opening in the roof; he had observed some stucco damage at the base of the chimney unrelated to a windstorm event.

---

[2] For reasons unclear from the record, Citizens sent Chen a letter on October 8, 2017, advising that the cost to repair or replace the damage to Chen's property did not exceed Chen's policy's hurricane deductible. Citizens advised Chen that it was crediting $9,250 toward Chen's annual deductible. It appears from this letter that Citizens found some degree of coverage, even though Citizens maintained that Chen experienced no windstorm-related roof damage. We need not further address this apparent contradiction because the parties did not do so on appeal.

B. <u>The Salleh inspection and resulting testimony</u>

Chen hired a civil engineer, Mohamad Salleh, to inspect the roof and to opine on the cause of Chen's interior water intrusion. Salleh, a licensed professional engineer for some twenty-two years, inspected Chen's property on November 3, 2018, and his resulting, brief report stated: "It appeared that the recent wind storm did affect the integrity of the existing roof system." The report contained attachments that showed where the roof had leaked and a proposed roof repair area.

Citizens deposed Salleh on August 19, 2019. In his deposition, Salleh testified that the most probable cause for Chen's interior water damage was intrusion from wind-driven rain under the shingles on Chen's roof. Salleh testified that, in reaching his conclusion, he spent two hours onsite at the Chen residence, inspecting both the roof and the interior. He testified that he studied weather conditions during the relevant time period, including wind speeds and rainfall. He considered the age and pitch of the roof, as well as the overall condition of the roof and its shingles. He testified that he consulted roofing books and that he also relied upon discussions with the property owner regarding when the interior water intrusion manifested itself.

At the end of his deposition, Salleh testified that, possibly, his opinion could have been more refined, had he conducted destructive testing on the

roof's shingles, but that he did not conduct such testing because he was confident in his opinion. Perhaps because of some imprecision in his testimony, on the same day of his deposition, Salleh executed a sworn affidavit confirming "that the water leaked into the home *must* have been caused by a small hole or holes created by Hurricane Irma."

C. Citizens's Daubert motion and order granting same

Arguing that Salleh's testimony lacked reliability, Citizens filed a Daubert motion seeking to exclude Salleh's expert testimony. In this motion, Citizens argued that Salleh's opinions, expressed in his report and deposition, conflict with each other and are not based upon scientific facts. Specifically, Citizens argued that unlike in his affidavit, in his deposition, Salleh had not mentioned that water had intruded into Chen's home through any holes or other openings. Citizens also argued that Salleh's testimony lacked reliability because Salleh had failed to perform any destructive testing on the roof shingles.

After conducting a hearing on Citizen's Daubert motion, the trial court agreed with Citizens and entered the challenged interlocutory order excluding Salleh as a witness. In its order, the trial court stated its rationale as follows:

> Mohamad Salleh expressed conflicting opinions regarding whether a windstorm caused an opening in the Plaintiff's roof.

5

His opinions were not based upon sufficient facts or data. Mr. Salleh's opinions do not meet the Daubert standard.

The transcript of the October 12, 2000 hearing on Citizen's Daubert motion reflects that the trial court questioned Salleh's reliability as an expert witness also because Salleh had not followed through with destructive testing of the roof shingles.

D. Citizen's summary judgment motion and order granting same

Shortly after Citizens prevailed on its Daubert motion, it filed its third amended motion for summary judgment, the trial court having denied Citizens's prior two summary judgment motions. Citizens's summary judgment motion essentially paralleled its Daubert motion in that Citizens maintained that Chen had no proof that Hurricane Irma caused roof openings that led to coverage for interior water damage to Chen's home. In support of its summary judgment motion, Citizens filed affidavits of its engineering expert and its adjustor, both of whom attributed the interior damage to Chen's home to roof wear and tear. Having struck Salleh as a witness,[3] the trial court

[3] After the trial court struck Salleh as Chen's expert, Chen engaged a second engineer who, apparently without inspecting Chen's property, issued a report and executed an affidavit that was filed by Chen in opposition to Citizen's summary judgment motion. In its summary judgment order, the trial court disregarded, as conclusory, the report and affidavit of Chen's second engineer, which he had prepared some three and half years after Hurricane Irma. Because of our reversal on other grounds, we need not, and therefore

determined, after a hearing on July 6, 2021, that all of the summary judgment evidence properly before it supported only Citizens's version of the cause of Chen's interior water damage, and therefore no genuine issue of material fact existed as to whether Chen's claim was covered. Thus, the trial court granted Citizen's summary judgment motion and entered final summary judgment on July 7, 2021.

Chen timely appealed both the Daubert order and the resulting final summary judgment.

**II. Standards of Review**

In this case, we employ two standards of review. We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); State Farm Mut. Auto. Ins. Co. v. Nob Hill Family Chiropractic, 328 So. 3d 1, 6 (Fla. 4th DCA 2021) (requiring "[f]or proper appellate review purposes" of a decision to exclude expert testimony under Daubert, that the trial court create a sufficient record and make specific findings of fact on the record "whether the testimony was scientifically reliable and factually relevant." (quoting Bitler v. A.O. Smith Corp., 400 F.3d 1227,1232 (10th Cir. 2005))). We employ a *de*

---

do not, offer any opinion as to whether the trial court erred in disregarding the proffered summary judgment evidence of Chen's second engineer.

*novo* review, however, of whether the summary judgment record presents a genuine issue of material fact. State Farm Mut. Auto. Ins. Co. v. Gonzalez, 178 So. 3d 448, 450 (Fla. 3d DCA 2015).

### III. Analysis

Based on our *de novo* review of the summary judgment evidence, if the trial court had not stricken Salleh as a witness, a genuine issue of material fact would have existed as to whether Chen's interior water damage was a covered loss under the Citizens policy. Indeed, Citizens's summary judgment evidence supports its position that the water intrusion was the result of normal wear and tear (therefore, not a covered loss), and, to the contrary, Chen's summary judgment evidence (concisely stated in Salleh's affidavit) supports their position that the water intrusion was the result of small holes caused by Hurricane Irma (therefore, covered under the policy). This presents a classic dispute of material fact. See Echevarria v. Lennar Homes, LLC, 306 So. 3d 327, 329-30 (Fla. 3d DCA 2020) (reversing summary judgment where there was a clear conflict between experts, giving rise to a disputed issue of material fact); see also Morales v. Citizens Prop. Ins. Corp., No. 3D21-276, 2022 WL 790294, at *1-3 (Fla. 3d DCA Mar. 16, 2022). Hence, our focus in this case is the outcome-determinative inquiry of

8

whether the trial court abused its discretion by striking Salleh as an expert witness under Daubert.

Under Daubert,[4] a trial court, in a "gatekeeping" role, makes a preliminary assessment whether expert testimony is admissible. Royal Caribbean Cruises, Ltd. v. Spearman, 320 So. 3d 276, 290 (Fla. 3d DCA 2021). In this assessment, the trial court must be careful not to intrude upon the adversary system because, as the Supreme Court explained in Daubert, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The

---

[4] In 2013, the Florida Legislature adopted, and codified, the Daubert standard as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

§ 90.702, Fla. Stat. (2020).

trial court, therefore, must be careful not to cross an elusive line between determining admissibility and weighing the evidence. <u>Altidor v. Carnival Corp.</u>, 550 F. Supp. 3d 1322, 1331 (S.D. Fla. 2021).

An expert's testimony must be reliable – and be based on a reliable methodology – and not be speculative. <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1256 (11th Cir. 2002). In striking Salleh under <u>Daubert</u>, the trial court determined that Salleh's testimony lacked the requisite reliability both because it was contradictory and because it was speculative in that it was not based upon sufficient facts or data. We disagree in both respects.

In the summary judgment context, we are required to view the summary judgment evidence in a light most favorable to Chen, as the non-movant. <u>Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n</u>, 127 So. 3d 1258, 1268 (Fla. 2013); <u>Morales</u>, 2022 WL 790294 at *2. While a party may not baldly repudiate prior deposition testimony in order to avoid summary judgment, a party may explain prior testimony with a subsequent affidavit, even if the affidavit creates a fact issue precluding summary judgment. <u>Ouellette v. Patel</u>, 967 So. 2d 1078, 1083 (Fla. 2d DCA 2007).

10

With these principles in mind, we conclude that Salleh's testimony, while unclear, was not contradictory. In his deposition Salleh testified that the water intrusion damage resulted from wind-driven rain coming into the house from under the roof shingles during Hurricane Irma. Salleh's affidavit clarified that small holes in the roof allowed such seepage.[5] We agree with Chen that any discrepancies between Salleh's affidavit and his deposition may provide fertile ground for cross-examination but should not serve as the basis for his being stricken under Daubert.

We also disagree with the trial court's determination that Salleh's testimony lacked the requisite scientific basis for reliability under Daubert. Salleh applied a similar roof-inspection methodology to that of Citizens's inspectors. He performed a two-hour inspection of the roof and shingles that included inspecting the home's interior where the water damage occurred. Salleh supplemented his inspection by conducting research in roofing manuals. Both sets of inspectors researched weather data on the alleged date of loss. Both sets of inspectors applied their professional engineering

---

[5] Portions of Salleh's deposition testimony were admittedly unclear. For example, when Salleh testified in his deposition that he did not know whether Hurricane Irma caused any roof openings, it appears that – consistent with his report and affidavit – he meant that he did not observe any roof openings. His affidavit later clarified that the water intrusion "must have" resulted from water intrusion through small wind-created holes underneath the shingles.

11

experience to arrive at their divergent opinions. Both sets of inspectors, therefore, applied a standard, reliable roof inspection method that serves to assist the trier of fact. See United Fire & Cas. Co. v. Whirlpool Corp., 704 F.3d 1338, 1342 (11th Cir. 2013) (holding that the district court abused its discretion by precluding expert testimony based on a "widely accepted methodology and grounded in the available physical evidence"); Baan v. Columbia Cnty., 180 So. 3d 1127, 1133 (Fla. 1st DCA 2015).[6]

Focusing not on what Salleh opined, but, rather, on what Salleh did, we conclude that Salleh's expert testimony satisfied the three prongs of section 90.702 (see footnote 4, *supra*), and that Chen established, by a preponderance of the evidence, an adequate basis for the admissibility of Salleh's testimony. Spearman, 320 So. 3d at 289. It is for the trier of fact to determine the worthiness of Salleh's professional opinion.

**III. Conclusion**

In considering Citizens's Daubert motion, the trial court erred by weighing the testimony of Chen's expert rather than limiting itself to an

---

[6] We note the trial court's stated concern that Salleh failed to perform constructive testing on roof shingles, the testing of which, Salleh suggested at his deposition, might support his theory. Again, the relevance of destructive testing of shingles goes to the weight of Salleh's testimony and its absence does not rob his testimony of its admissibility.

examination of its admissibility. Accordingly, we reverse both the <u>Daubert</u> order and the final summary judgment and remand for further proceedings consistent with this opinion.